# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF MONTANA

# BUTTE DIVISION

| | |
|---|---|
| MARK J. VANGSNES, as Conservator for JEREMY PAUL VANGSNES, an incompetent,<br><br>Plaintiff,<br><br>vs.<br><br>LIBERTY MUTUAL GROUP INC.,<br><br>Defendant. | CV 12-85-BU-DLC-CSO<br><br>**FINDINGS AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE** |

Plaintiff Mark J. Vangsnes, as conservator for Jeremy Paul Vangsnes ("Jeremy"), filed this action in state court against Defendant Liberty Mutual Group Inc. seeking stacked medical payments coverage after Jeremy was injured in a motor vehicle accident. *Cmplt. (Dkt. 1-2) at 1-3*.[1] Liberty removed the action to this Court asserting diversity jurisdiction. *Liberty's Notice of Removal (Dkt. 1) at ¶ 5*. Pending is Mark Vangsnes' motion to remand. *Mtn. to Remand (Dkt. 8)*. For the

---

[1] Citations to page numbers refer to those assigned by the Court's electronic filing system.

-1-

reasons discussed below, the Court recommends[2] that Vangsnes' motion be granted.

I. **BACKGROUND**[3]

On July 21, 2009, Scott Minear was driving Daniel Vangsnes' vehicle. It crashed, injuring Jeremy, who is Daniel Vangsnes' brother. Jeremy's parents, Mark and Kathleen Vangsnes, had an insurance policy. Mark Vangsnes claims the policy was with Defendant Liberty Mutual Group Inc. ("Liberty"). Liberty claims that it did not issue the subject policy, but that the policy was actually issued by Liberty Mutual Fire Insurance Company, which has not been named as a defendant.

The policy issued to Mark and Kathleen Vangsnes contains two provisions relevant to the dispute at hand. First, the policy contains a

---

[2]The Ninth Circuit has not ruled whether motions to remand are dispositive and thus require a magistrate judge to proceed under findings and recommendations. *Dutro v. Hilarides*, 2012 WL 1552772, n.1 (E.D. Cal. 2012). Other Circuits, however, have concluded that such motions are dispositive. *Id.* (citing *Williams v. Beemiller, Inc.,* 527 F.3d 259, 264–266 (2d Cir. 2008); *Vogel v. U.S. Office Products Co.,* 258 F.3d 509, 514–17 (6th Cir. 2001); *First Union Mortgage Corp. v. Smith,* 229 F.3d 992, 994–97 (10th Cir. 2000); *In re U.S. Healthcare,* 159 F.3d 142, 145–46 (3d Cir. 1998)). The Court proceeds accordingly.

[3]The background information is from the parties' pleasdings and other filings.

$5,000 per person Medical Payments coverage ("Med-Pay") provision. Second, the policy contains an Underinsured Motorists coverage ("UIM") provision of $100,000 per person and $300,000 per accident. The policy insured four vehicles.

On November 13, 2012, Plaintiff Mark Vangsnes, as conservator for Jeremy, filed the instant action against Liberty in state court seeking stacked Med-Pay coverage under the policy ("Med-Pay action") in an amount of $20,000, plus interest, costs, and attorneys' fees. The Med-Pay action was designated in state court as DV-12-869A.

On November 13, 2012, Mark and Kathleen Vangsnes, both individually, and Mark Vangsnes, as Jeremy's guardian and conservator, also filed against Liberty in state court a separate action seeking stacked UIM coverage under the policy ("UIM action") in the amount of $1,100,000, plus interest, costs, and attorneys' fees. The UIM action was designated in state court as DV-12-846A.

On December 20, 2012, Liberty removed both the Med-Pay action and the UIM action. Liberty removed this action – the Med-Pay action – under 28 U.S.C. § 1441(a) and (b) invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332(a)(1). Plaintiff Mark Vangsnes ("Vangsnes") now moves to remand this action to state court.

## II. PARTIES' ARGUMENTS

As an initial matter, Vangsnes concedes that the UIM action was properly removed. He notes that in the UIM action, which has been designated in this Court as CV 12-84-BU-DLC-CSO, Plaintiffs claim in excess of $1,100,000. Thus, the amount in controversy exceeds the $75,000 threshold for diversity actions.

But Vangsnes seeks remand of this Med-Pay action. He argues that the $20,000 in stacked medical payments coverage he seeks, even including interest, costs, and attorneys' fees, makes the amount in controversy less than the $75,000 limit that permits federal courts to exercise diversity jurisdiction. *Pltf's Br. in Support of Mtn. to Remand (Dkt. 9) at 1*.

Vangsnes argues that Liberty wrongly asserted in its Notice of Removal that this Med-Pay action and the UIM action are "companion action[s]" that "will eventually be properly consolidated under Fed. R. Civ. P. 42(a)" and together have an amount in controversy that exceeds $75,000. *Id. at 2* (quoting *Notice of Removal (Dkt. 1) at ¶¶ 7 and 8*). He argues that: (1) Liberty is not permitted "to claim [the] jurisdictional amount in a diversity case by lumping two cases together, one which

meets the jurisdictional amount and another that does not[,]" *id. at 2*; (2) the Court cannot consolidate the two cases under Rule 42(a) when it lacks jurisdiction over one of the cases sought to be consolidated, *id.*; and (3) the Court lacks supplemental jurisdiction over this case under 28 U.S.C. § 1367 because, even though the UIM action was properly removed, that action contains no Med-Pay claim that would invoke § 1367 supplemental jurisdiction, *id. at 2-3*.

In response, Liberty first argues that the Court has supplemental jurisdiction under 28 U.S.C. § 1367(a). *Liberty's Resp. Br. (Dkt. 12) at 3-7*. Liberty argues that § 1367 codified the scope of supplemental jurisdiction articulated by the United States Supreme Court in *United Mine Workers v. Gibbs*, 383 U.S. 715 (1966). *Gibbs*, Liberty argues, established that three distinct facets comprise an Art. III case and all three are satisfied here because: (1) the federal claims – from the UIM action – and the claims in this case derive from "a common nucleus of operative facts" since all claims arise from the same insurance contract and vehicle accident, *Dkt. 12 at 5*; (2) the UIM action has "substance sufficient" to confer subject matter jurisdiction over the Med-Pay action, *id. at 5-6*; and (3) the UIM action and Med-Pay action involve

claims arising from the same accident and insurance contract such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding[,]" *id. at 5-7* (quoting *Gibbs*, 383 U.S. at 725).

Second, Liberty argues that the Court, under *Exxon Mobile Corp. v. Allapattah Servs.*, 545 U.S. 546 (2005), can exercise supplemental jurisdiction over a claim where there is complete diversity of citizenship but where the amount in controversy does not meet the $75,000 limit. *Dkt. 12 at 7-8*.

Third, Liberty argues that judicial economy mandates that the Court not remand this action. *Id. at 9.* Liberty argues that

> judicial economy will be served by litigating both the Med-Pay claim and the UIM claim in the same suit. It will prevent duplicative effort and conserve Montana's limited judicial resources. These two complaints which arise from a common nucleus of operative fact ... can be consolidated pursuant to Fed. R. Civ. P. 42(a). The fact the Plaintiff decided to file two separate actions does not prevent this Court from consolidating the actions and deciding all claims which arise under the insurance contract. To remand this case back to state court would only create a multiplicity of litigation, which supplemental jurisdiction seeks to prevent.

*Id. at 11-12.*

Fourth, Liberty argues that, should the Court grant Vangsnes' motion to remand, it should not grant him attorney fees in moving to

claims arising from the same accident and insurance contract such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding[,]" *id. at 5-7* (quoting *Gibbs*, 383 U.S. at 725).

Second, Liberty argues that the Court, under *Exxon Mobile Corp. v. Allapattah Servs.*, 545 U.S. 546 (2005), can exercise supplemental jurisdiction over a claim where there is complete diversity of citizenship but where the amount in controversy does not meet the $75,000 limit. *Dkt. 12 at 7-8*.

Third, Liberty argues that judicial economy mandates that the Court not remand this action. *Id. at 9.* Liberty argues that

> judicial economy will be served by litigating both the Med-Pay claim and the UIM claim in the same suit. It will prevent duplicative effort and conserve Montana's limited judicial resources. These two complaints which arise from a common nucleus of operative fact ... can be consolidated pursuant to Fed. R. Civ. P. 42(a). The fact the Plaintiff decided to file two separate actions does not prevent this Court from consolidating the actions and deciding all claims which arise under the insurance contract. To remand this case back to state court would only create a multiplicity of litigation, which supplemental jurisdiction seeks to prevent.

*Id. at 11-12.*

Fourth, Liberty argues that, should the Court grant Vangsnes' motion to remand, it should not grant him attorney fees in moving to

claims arising from the same accident and insurance contract such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding[,]" *id. at 5-7* (quoting *Gibbs*, 383 U.S. at 725).

Second, Liberty argues that the Court, under *Exxon Mobile Corp. v. Allapattah Servs.*, 545 U.S. 546 (2005), can exercise supplemental jurisdiction over a claim where there is complete diversity of citizenship but where the amount in controversy does not meet the $75,000 limit. *Dkt. 12 at 7-8*.

Third, Liberty argues that judicial economy mandates that the Court not remand this action. *Id. at 9.* Liberty argues that

> judicial economy will be served by litigating both the Med-Pay claim and the UIM claim in the same suit. It will prevent duplicative effort and conserve Montana's limited judicial resources. These two complaints which arise from a common nucleus of operative fact ... can be consolidated pursuant to Fed. R. Civ. P. 42(a). The fact the Plaintiff decided to file two separate actions does not prevent this Court from consolidating the actions and deciding all claims which arise under the insurance contract. To remand this case back to state court would only create a multiplicity of litigation, which supplemental jurisdiction seeks to prevent.

*Id. at 11-12.*

Fourth, Liberty argues that, should the Court grant Vangsnes' motion to remand, it should not grant him attorney fees in moving to

remand. *Id. at 12.* Liberty argues that it has an objectively reasonable basis for removal and an award of fees is not appropriate. *Id. at 12-13.*

In reply, Vangsnes argues that the cases upon which Liberty relies in arguing that the Court may exercise supplemental jurisdiction are all distinguishable. *Vangsnes' Reply Br. (Dkt. 14) at 1-2.* Vangsnes also argues that Liberty did not move to consolidate the two state cases before improperly removing the Med-Pay action to this Court even though the claim does not satisfy the jurisdictional amount. *Id. at 2.* Because the Med-Pay action, standing alone, lacks the requisite amount in controversy, he argues, this Court has no jurisdiction over it and must remand it. *Id. at 2-3.* Finally, Vangsnes argues the Court should order that Liberty pay his attorneys' fees for its remand motion challenging the improper removal. *Id. at 3-4.*

### III. LEGAL STANDARD

Removal of a civil action from state court to federal court is appropriate if the action could have originally been filed in federal court. 28 U.S.C. § 1441; *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). The "removal statute is strictly construed, and any doubt about the right of removal requires resolution in favor of remand."

*Moore–Thomas v. Alaska Airlines, Inc.*, 553 F.3d 1241, 1244 (9th Cir. 2009) (citing *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)). Courts must "strictly construe the removal statute against removal jurisdiction" and must reject federal jurisdiction "if there is any doubt as to the right of removal in the first instance." *Gaus*, 980 F.2d at 566 (citations omitted). There is a "strong presumption" against removal, and the defendant has the burden to establish that removal is proper. *Id.* at 566-67. Any doubts are to be resolved in favor of remand. *Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1118 (9th Cir. 2004) (citing *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003)).

Here, the parties agree that complete diversity exists between them, as required by 28 U.S.C. § 1332(a). The only issue is whether the required jurisdictional amount of $75,000 is in controversy. Liberty bears the burden of establishing, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. *Gaus*, 980 F.2d at 567 (citing *McNutt v. General Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *Sanchez v. Monumental Life Inc. Co.*, 102 F.3d 398, 404 (9th Cir. 1996). Conclusory allegations as to the amount in controversy are inadequate. *Matheson*, 319 F.3d at 1090-91.

To determine whether this burden has been met, the Court must first consider whether it is "facially apparent" from the complaint that the jurisdictional amount has been satisfied. See *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997). If not, the Court may examine facts and evidence submitted by the parties. In *Singer*, the Ninth Circuit adopted a procedure used by the Fifth Circuit to determine the type of evidence a court may consider:

> the court may consider facts in the removal petition, and may 'require parties to submit summary-judgment-type evidence relevant to the amount in controversy at the time of removal.'

*Singer*, 116 F.3d at 377 (quoting *Allen v. R&H Oil & Gas Co.*, 63 F.3d 1326, 1336 (5th Cir. 1995)).

## IV. DISCUSSION

Applying the foregoing legal standard, the Court concludes that this action could not have originally been filed in federal court and, thus, must be remanded. *Caterpillar*, 482 U.S. at 392. It is "facially apparent" from Vangsnes' Complaint that the jurisdictional amount has not been satisfied. In the Complaint, Vangsnes claims "$20,000 in applicable Med Pay benefits ... attorney's fees ... interest on applicable Med Pay benefits at 10% per annum ... costs and disbursements

incurred ... [and] such further relief as may be justified ....." *Dkt. 1-2 at 3*. Vangsnes affirmatively states that all relief he seeks in this action is "in an amount less than $75,000." *Id. at 2*. Thus, this action could not have originally been filed in federal court. 28 U.S.C. § 1441; *Caterpillar,* 482 U.S. at 392.

Even if it were not facially apparent from Vangsnes' Complaint that the jurisdictional amount has not been satisfied, Liberty nevertheless has failed to establish, by a preponderance of the evidence, that the amount in controversy exceeds $75,000, as *Gaus* and other cited authority require. In its Notice of Removal, Liberty represents only that: (1) "this action and the companion action arise out of the same insurance contract and the same automobile accident[ ]"; (2) that Med-Pay and UIM benefits "are available under the same policy and thus the two actions will eventually be properly consolidated under Fed. R. Civ. P. 42(a)[ ]"; and (3) "[t]he amount in controversy claimed by Plaintiffs in the consolidated actions, exclusive of interest and costs, on the basis of the Complaints, exceeds Seventy-Five Thousand Dollars ($75,000.00)." *Dkt. 1 at ¶¶ 7 and 8*.

As is evident from the above-cited authority, such conclusory

allegations as to the amount in controversy are inadequate. *Matheson*, 319 F.3d at 1090-91. The cases have not been consolidated. Thus, Liberty's characterization of the actions as "consolidated" is inaccurate and insufficient to vest this Court with subject matter jurisdiction. *Gaus*, 980 F.2d at 566 (removing defendant bears the burden of "actually proving the facts to support jurisdiction").

Also, the Court is not persuaded by Liberty's reliance on the supplemental jurisdiction statute – 28 U.S.C. § 1367. It provides:

> in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

28 U.S.C. § 1367(a).

This statute and the cases construing it upon which Liberty relies speak in terms of supplemental jurisdiction over "claims" related to claims in the action within the Court's original jurisdiction. The statute's language does not expressly confer federal jurisdiction over "actions," "cases," or "lawsuits" related to the action over which the federal court has original jurisdiction, and Liberty has cited no cases

that support the position that it does.

Also, the removal statute, 28 U.S.C. § 1441, does not permit consideration of the UIM action in assessing the propriety of Liberty's removal of this action. Standing alone, as noted, the amount in controversy in this action does not meet the threshold for diversity jurisdiction. The Court is not permitted to use the amount in controversy in a separate action to boost the amount in controversy in this action in order to achieve the requisite jurisdictional amount. See, e.g, *Syngenta Crop Protection, Inc. v. Henson*, 537 U.S. 28, 34 (2002) (removal statute "requires that a federal court have original jurisdiction over an action in order for it to be removed from a state court. The All Writs Act, alone or in combination with the existence of ancillary jurisdiction in a federal court, is not a substitute for that requirement."); see also *Weinrich v. Levi Strauss & Co.*, 366 F.Supp.2d 439, 445 (S.D. Miss. 2005) ("Before a case can be removed, a particular suit has to have a basis, in the complaint of *that suit*, on which it can be removed.") (emphasis in original).

The Court also finds unpersuasive Liberty's reliance on *Exxon Mobile Corp. v. Allapattah Servs.*, 545 U.S. 546 (2005). That case

involved a class action in which one plaintiff met the amount in controversy but the others did not. The Supreme Court held that 28 U.S.C. § 1367 allowed supplemental jurisdiction over the claims brought in the single action. 545 U.S. at 559. *Allapattah* is distinguishable because the case at hand is not a class action and this Court has no jurisdiction over this case in the first instance for the reason already discussed above.

Finally, the Court concludes that Liberty's "judicial economy" argument, while logical, cannot be employed to trump the required strict construction of the removal statute or the strong presumption against removal and in favor of remand discussed above. While it is sensible that two claims made against a single insurer on a single insurance policy by essentially the same plaintiffs be brought in a single action, the discussion of the foregoing authority evinces no clear prohibition to proceeding in separate actions on the claims, as Vangsnes has done here.

For all of the foregoing reasons, the undersigned recommends that the Court grant Vangsnes' motion and remand this action.

Vangsnes also seeks attorneys' fees incurred in bringing his

motion to remand.  *Dkt. 9 at 3; Dkt. 14 at 4.*  28 U.S.C. § 1447(c) provides that "[a]n order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal."  A court should award attorneys fees and costs under § 1447(c) "only where the removing party lacked an objectively reasonable basis for seeking removal."  *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005).  The Court has "wide discretion" in deciding whether to award attorney fees.  *Gotro v. R&B Realty Group*, 69 F.3d 1485, 1487 (9th Cir. 1995).

Under the circumstances here, the Court cannot conclude that Liberty lacked an objectively reasonable basis for seeking removal.  As noted above, judicial economy, litigation efficiency, and resources conservation suggest the appropriateness of consolidation of the actions or consolidation of the claims into a single action.  That the foregoing discussion led the Court to the conclusion that it ultimately reached does not diminish the objective reasonableness of Liberty's argument for removal.  Attorneys' fees should be denied.

## V. CONCLUSION

Based on the foregoing, IT IS RECOMMENDED that Vangsnes' motion to remand (*Dkt. 8*) be GRANTED, that this matter be remanded to state court, and that Vangsnes' request for attorneys' fees be DENIED.

NOW, THEREFORE, IT IS ORDERED that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that pursuant to 28 U.S.C. § 636, any objections to the findings and recommendation must be filed with the Clerk of Court and copies served on opposing counsel within fourteen (14) days after service hereof, or objection is waived.

DATED this 1st day of February, 2013.

/S/ Carolyn S. Ostby
United States Magistrate Judge